KUGELMAN et al. v. RITTER et al.

(Supreme Court, Appellate Term, First Department. May 5, 1915.)

SALES ⊂⇒436—REMEDIES OF BUYER—BREACH OF WARRANTY.

An allegation, in a counterclaim in an action for the price of merchandise, that defendant "duly offered to return to plaintiff the merchandise referred to, which was defective," showed a sufficient compliance with Sales Law (Laws 1911, c. 571) § 130, providing that if a buyer, after acceptance of goods warranted, fails to give notice of the breach of warranty within a reasonable time after he knows or ought to know of such breach, the seller shall not be liable.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1246; Dec. Dig. ⊂⇒436.]

Appeal from City Court of New York, Trial Term.

Action by Julius G. Kugelman and Charles Frankland against Leo Ritter and William C. Ritter. From a judgment for plaintiffs, and an order denying a new trial, defendants appeal. Reversed and remanded. See, also, 148 N. Y. Supp. 140.

Argued March term, 1915, before LEHMAN, HENDRICK, and COHALAN, JJ.

Joseph Gans, of New York City, for appellants.
Samuel J. Rawak, of New York City, for respondents.

HENDRICK, J. According to the allegations of the complaint in this action, the plaintiffs' assignors sold and delivered merchandise to the defendants of the value of $1,117.50, upon which defendants were entitled to a credit of $500.72, leaving a balance alleged to be due plaintiffs of $616.78. After putting in issue that part of the complaint which averred that plaintiffs were copartners, the defendants set up as a separate defense and counterclaim in substance as follows:

That they purchased of plaintiffs' assignors certain merchandise, which the said plaintiffs' assignors stated, represented, and warranted was merchandise of good and merchantable quality and fit for use in the manufacture of ladies' coats and cloaks; that the defendants were at that time engaged in the business of manufacturing ladies' cloaks and coats, and had no other use for said material; that at the time of such sale plaintiffs' assignors exhibited to these defendants samples of merchandise which they agreed to sell and deliver; that said plaintiffs' assignors represented and warranted that said sample of merchandise, as exhibited by them, was of good quality and fit for use in the manufacture of ladies' coats and suits, and that all of the goods to be delivered to these defendants would be in all respects equal to the sample, and would also be of good and merchantable quality and fit for use in the manufacture of ladies' coats and cloaks; that, relying upon said statements, representations, and warranty, the defendants agreed to purchase from plaintiffs' assignors a large quantity of said merchandise referred to in the complaint herein; that thereafter plaintiffs' assignors delivered to defendants large quantities of said material, and that defendants, not knowing of the defective and improper condition, paid to plaintiffs' assignor for a large portion of said merchandise sums of money largely in excess of the amount claimed by plaintiffs, and that defendants, relying on said statements, manufactured and made up quantities of said merchandise into cloaks and coats; that the material so sold and delivered by plaintiffs' assignors to these defendants, including the merchandise referred to in the complaint, was not good and merchantable material, and was not fit for use in the manufacture of ladies' cloaks and coats; that the same was worthless, and large quantities thereof were re-

turned to these defendants by their customers, who refused to pay for the same; that a large portion of the merchandise sold and delivered by plaintiffs' assignors to these defendants was not equal to the sample exhibited by the assignor of the plaintiff to these defendants at the time of the sale, but was greatly inferior thereto, and was worthless and useless to these defendants; that these defendants duly offered to return to the plaintiffs the merchandise referred to, which was so defective, improper, and unmarketable, but that plaintiffs and assignors of the plaintiffs refused to accept the same, and the said merchandise is now held by the agent of the plaintiffs and the plaintiffs' assignors for the use and benefit of the plaintiffs.

To this counterclaim the plaintiffs made reply, but did not deny the first paragraph of the separate defense, thereby admitting the representations, sales by sample, and warranty of quality of its fitness for the purposes for which it was purchased.

At the opening of the trial the plaintiffs' attorney moved to dismiss this counterclaim upon the ground that it failed to constitute a cause of action for breach of warranty:

"In that there is no allegation in said counterclaim that they gave any notice of breach of warranty, and gave the same within a reasonable time, as they must do under the Sales Law."

In support of this motion plaintiffs quoted section 130 of the Sales Law, which reads as follows:

"In the absence of an express or implied agreement of the parties, acceptance of the goods by the buyer does not discharge the seller from * * * damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

The following colloquy then took place:

"The Court: This is a contract for the sale of goods by sample, and the question is simply whether they were up to sample or not. Now, you had a reasonable opportunity to examine the goods and return them, under the Sales Act, and if you did not offer to return them under the Sales Act, but accepted them and manufactured them, then you cannot recover on your counterclaim under the Sales Act.

"Mr. Gans: Not all. We did not manufacture all of them.

"The Court: Well, you cannot return them piecemeal.

"Mr. Gans: Well, these are various deliveries from time to time. It was not merely one delivery. We do not claim that all of these goods were no good. We have paid them over $7,000 for goods that we got from them, but these goods which were made up had certain defects in them which could not be discovered upon an examination, but could only be ascertained after the goods had been made up and were being worn.

"The Court: I do not think you have alleged that in your answer.

"Mr. Gans: We have alleged in our answer that the defects could not be discovered.

"The Court: You have pleaded a conclusion of law as to that, but you have not alleged facts.

"Mr. Gans: Then I will ask your honor's permission to amend the answer so as to insert after the words 'duly offered to return the said merchandise,' etc., the words 'and duly gave notice to the assignors of the plaintiff of such defective condition of said goods.'

"The Court: Motion denied.

"Mr. Gans: Or, rather, I will use the words of the statute, 'that immediately upon the discovery of the defects the vendors were immediately notified of such defects, and within a reasonable time due notice was given of such defects and defendants duly offered to return the said merchandise.'

"The Court: I will deny the motion to amend at this stage of the proceeding.

"Mr. Gans: Well, if there is any question that we have not separated which were manufactured and which were not manufactured, then I will ask to amend the answer by alleging that, of the merchandise delivered by the assignors of the plaintiffs, 16 pieces thereof, aggregating in value an amount in excess of the amount set forth in the complaint, have not yet been used or manufactured, and that immediately upon the discovery of the defects the defendants duly offered to return the said merchandise, and the same is now in the possession of the plaintiffs.

"Mr. Rawak: I object to that amendment as changing the issues.

"The Court: Motion to amend denied.

"Mr. Gans: Does your honor hold that we cannot amend at all?

"The Court: I am not here to enlighten you. I am here to pass upon the questions propounded.

"Mr. Gans: Well, will your honor give me the benefit of an exception as to each of the denials?

"The Court: Yes.

"Mr. Gans: I am free to confess to your honor that I do not know what to do, unless your honor has something in mind.

"The Court: I have nothing in mind, except that a motion has been made to dismiss the counterclaim.

"Mr. Gans: Well, I respectfully submit to your honor that the counterclaim as set up in our answer is sufficient as a matter of law. We allege, first, the warranty, which they admit by their reply, by not denying. Then we allege that the goods that they delivered did not come up to the warranty. Then we allege that we duly offered to return to the plaintiff the defective merchandise, and I submit that the words 'duly offered to return to the plaintiff' the merchandise referred to. means within a reasonable time. If my opponent contends that it does not mean within a reasonable time, then I beg to call your honor's attention to the Code provision that, where a party is required to do a certain thing within a certain time, if he pleads that he has duly done it, that is considered sufficient. If there is any doubt as to that, why then I submit to your honor that we should be allowed to add the words 'within a reasonable time,' and I submit that we had the right to return any goods that did not come up to the warranty, provided we offered to do so within a reasonable time.

"The Court: The motion made on behalf of the plaintiffs, to dismiss the complaint on the ground that it does not state facts sufficient to constitute a cause of action, is granted.

"Mr. Gans: I except."

We think this was error. The allegation in the counterclaim that the defendants "duly offered to return to the plaintiffs the merchandise referred to which was so defective," etc., was a sufficient compliance with section 130 of the Sales Law, even if we assume, without deciding, that the pleadings must set up the giving of such a notice, and that it is not a mere matter of evidence. The cases cited by the plaintiffs in support of their contentions are not conclusive. In Rothenberg v. Shapiro, 140 N. Y. Supp. 148, the counterclaim failed to state either that the goods were returned, offered to be returned, or that any notice was given the vendor that the goods were of inferior quality. This was a Special Term case, and considerable research fails to disclose that it has ever been followed. Marx v. Locomobile Co., 82 Misc. Rep. 468, 144 N. Y. Supp. 937, was a Trial Term case, and the court in reviewing the evidence says in its opinion "at no time was there a suggestion made to return or offer to return the truck."

Judgment reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.